```
                   UNITED STATES DISTRICT COURT

                   EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                       CRIMINAL ACTION

v.                                             NO. 12-1

GERARD J. HOWARD, ET AL.                       SECTION "F"
```

ORDER AND REASONS

Defendants Telly Hankton, Thomas Hankton, Andre Hankton, Walter Porter, Kevin Jackson, and Terrell Smothers move for sanctions and to dismiss the indictment. For the reasons that follow, the motions are DENIED.

Background

The facts of this case are more completely set forth in this Court's January 13, 2014 Order and Reasons. A summary of the facts most pertinent to resolution of the pending motions follows.

On October 18, 2012, Telly Hankton, Thomas Hankton, Andre Hankton, Walter Porter, Kevin Jackson, Terrell Smothers, and seven other codefendants were indicted in a twenty-two count second superseding indictment. The indictment alleges various charges including the murder of four individuals, assault with a deadly weapon, illegal possession of firearms, drug possession and distribution, money laundering, lying under oath, and obstruction of justice. Telly Hankton, Thomas Hankton, Andre Hankton, Walter Porter, and Kevin Jackson are charged with death-penalty eligible offenses.

1

On November 8, 2013, Telly Hankton filed a motion for sanctions against the government with a request for an evidentiary hearing, contending that FBI agents violated the secrecy mandate of Rule 6(e) of the Federal Rules of Criminal Procedure by meeting with newspaper reporters on October 10, 2012, approximately one week before the return of the second superseding indictment and just three days before the publication of an article predicting the indictment and its contents. Thomas Hankton, Walter Porter, and Kevin Jackson each moved to join and supplement the motion, and the Court granted their requests. On January 15, 2014, the government responded to the motion for sanctions, submitting over 1200 pages of exhibits.

On February 3, 2014, Telly Hankton moved to dismiss the indictment, or, alternatively, the notice of special findings as it relates to Counts 5, 6, 8, and 9, and for an evidentiary hearing, all for the same reasons as in the motion for sanctions. The next day, the Court granted oral argument on both the motions for sanctions and to dismiss the indictment, and provided that each side shall have time for presentation of evidence and argument. Andre Hankton, Thomas Hankton, Walter Porter, Kevin Jackson, and Terrell Smothers each moved to join and supplement the motion to dismiss and the Court granted their requests. On March 19, 2014, the government responded to the motion to dismiss.

Pursuant to the Court's order granting oral argument, Telly

Hankton and Andre Hankton requested the issuance of subpoenas for testimony from former Times Picayune reporters John Simerman and Gordon Russell, FBI Special Agents R.D. Hardgrave and Keith Burriss, and former FBI Special Agent-in-Charge Todd Cox.  After the subpoenas issued, the government moved to quash, and on March 26, 2014, the Court granted in part and denied in part that motion.  In its Order and Reasons, the Court reaffirmed that it would hold an evidentiary hearing on the motions for sanctions and to dismiss the indictment, and ordered that testimony at that hearing must directly relate and be limited to the October 10, 2012 meeting and the October 13, 2012 newspaper article.  On May 28 and 29, 2014, the Court held the evidentiary hearing, and the motions are now ripe for determination.

## I.  Law and Application

Rule 6(e) of the Federal Rules of Criminal Procedure prohibits certain persons, including grand jurors, court reporters, government attorneys, and government personnel who assist the government attorneys from knowingly disclosing "matters occurring before the grand jury."[1]  Although the Rule does not define "matters occurring before the grand jury," courts have interpreted the phrase to include "anything which may tend to reveal what transpired before the grand jury."  In re Grand Jury Investigation

---

[1] The government admits that Agents Hardgrave, Burriss, and Cox are "government personnel" specifically included in the Rule 6(e) list in this case.

(Lance), 610 F.2d 202, 216 (5th Cir. 1980)(internal quotation marks and citations omitted). Disclosures regarding the names of witnesses, the subjects of an investigation, the nature of the crimes or the number of persons to be charged, specific evidence presented, and when the grand jury will return an indictment are all prohibited. Id. at 216-18. "However, disclosures of information obtained from a source independent of the grand jury proceedings, such as a prior government investigation" and "statement[s] of opinion as to an individual's potential criminal liability" do not violate Rule 6(e), because they do not reveal secret grand jury information. Id. at 217.

A knowing violation of Rule 6(e) may be punished with contempt sanctions, Fed. R. Crim. P. 6(e)(7), or in more serious cases, with dismissal of the indictment. See Lance, 610 F.2d at 220-21. However, a district court may only dismiss an indictment based on Rule 6(e) violations if the defendants suffered actual prejudice. Bank of Nova Scotia v. United States, 487 U.S. 250, 254 (1988); see also Fed. R. Crim. P. 52(a) (mandating a harmless error inquiry). Generally, "[u]nder this standard, dismissal of the indictment is appropriate only 'if it is established that the violation substantially influenced the grand jury's decision to indict,' or if there is 'grave doubt' that the decision to indict was free from the substantial influence of such violations." Bank of Nova Scotia, 487 U.S. at 256 (quoting United States v. Mechanik, 475

4

U.S. 66, 78 (1986)). Dismissal of the indictment without such a showing is possible only in cases "in which the structural protections of the grand jury have been so compromised as to render the proceedings fundamentally unfair, allowing the presumption of prejudice." Id. at 257. A presumption of prejudice may be appropriate where, for example, there exists "a history of prosecutorial misconduct, spanning several cases, that is so systematic and so pervasive as to raise a substantial and serious question about the fundamental fairness of the process which resulted in the indictment." Id. at 259.

In a motion for sanctions or to dismiss an indictment for alleged Rule 6(e) violations, the burden is on the movant to make a prima facie showing. Lance, 610 F.2d at 214. If that showing is made, then the burden shifts to the government to show that no violation occurred. See id. at 219-20. Upon a sufficient prima facie showing, an evidentiary hearing may be necessary to determine whether a violation occurred and by whom. See id. at 220-21.

The Court held an evidentiary hearing in this case on May 28 and 29, 2014. The issue now before the Court is whether the government has met its burden of showing that no 6(e) violation occurred. The government denies any violation, and has submitted argument and evidence. Although the government admits that FBI agents disclosed information to reporters at the October 10th meeting that then appeared in the October 13th news article, the

5

government contends that none of the information disclosed constitutes "matters occurring before the grand jury," and that the defendants cannot show prejudice. The defendants counter that the government purposefully disclosed grand jury information in a calculated effort to improperly influence the grand jury's decision to indict.

The Court is persuaded that the defendants have failed to show any prejudice. There is simply no indication, beyond speculation, that the agents' statements substantially influenced the grand jury's decisions to indict those defendants mentioned in the article, or those others not mentioned. See Bank of Nova Scotia, 487 U.S. at 256. Defendants' assertion "that the grand jury acted with the frenzy of a lynch mob" is mere histrionics. Although the government admits that at least one copy of the Times Picayune article was present in the grand jury room before deliberations, the prosecutor, to his credit, specifically and emphatically admonished the grand jury to disregard the article. See id. at 261. How the article got inside remains unknown. Who read it has never been established. This appears to have been an isolated incident in the course of a nearly year-long investigation that included testimony from dozens of witnesses; there is nothing to establish that the grand jury's independence was infringed by government misconduct. See id. at 261, 263.

Although the Court finds no proof of undue influence, whether

6

the agents knowingly disclosed grand jury information also presents a serious question.  The government insists that the agents disclosed only their personal opinions and facts developed as a result of their independent investigation of this case, and that any grand jury information contained in the article can be attributed to other sources, including court records, police reports, and many previously published news articles.  The government maintains that the disclosures were made solely for "the strategic purpose of ensuring officer safety for the post indictment arrest plan."  The defendants speculate, again, that the agents were the source of grand jury information appearing in the article, including, most prominently, the timing of the grand jury's return of the indictment.  But this record fails to persuade that whatever the agents said at the meeting had any influence whatsoever on the timing of the publication of the article or the indictment, except, possibly, hard work by the reporter.  The Court finds no knowing Rule 6(e) violation.[2]

    Accordingly, the motions are DENIED.[3]

---

    [2] The Court does not separately consider Walter Porter's argument based on 28 C.F.R. § 50.2 because it is cumulative of the 6(e) issue and, regardless, the regulation does not create a private right of action.  <u>Hatfill v. Ashcroft</u>, 404 F. Supp. 2d 104, 120-21 (D. D.C. 2005).

    [3] Agents Hardgrave and Burriss asked about the accuracy of the chart that accompanied the news story, and talked about some generic background of the alleged Hankton crime gang, including a crime fiction movie, which they, admittedly, ought not have done. But there is no evidence that such minor lapses had any grand jury

New Orleans, Louisiana, May 29, 2014

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE

---

influence, much less actual prejudice.  See Lance, 610 F.2d at 217 (statements of opinion and information gained through independent investigation do not constitute secret grand jury information and thus their disclosure does not violate Rule 6(e)); see also Bank of Nova Scotia, 487 U.S. at 256 ("substantial influence" on grand jury required for dismissal of indictment based on a Rule 6(e) violation).  Moreover, the Court's ability to sanction a Rule 6(e) transgression is not limited to contempt or dismissal.  See Fed. R. Crim. P. 6(e)(7).