UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                              CRIMINAL ACTION

V.                                                    NO. 12-1

WALTER PORTER ET AL.                                  SECTION "F"

                            ORDER & REASONS

   Before the Court is Walter Porter's motion to suppress the identification made by "Witness D." For the reasons that follow, the motion is DENIED.

                              **Background**

   On June 19, 2014, a federal grand jury returned a third superseding indictment charging 13 defendants with 24 counts of federal crimes. The grave charges alleged in the indictment have been listed, summarized, and repeated throughout the procedural history of this case. This Order and Reasons assumes familiarity. This motion is brought by the alleged gunman of the criminal enterprise, Walter Porter.

   Porter is charged in Counts 1, 3, 4, 10, 11, 12, 13, 14, 15, 16, 17, 18, 21, and 22 of the indictment. He is charged as a member of the RICO and gun conspiracies, for three counts of being a felon in possession of a firearm, and for using a firearm in a drug crime and crime of violence. He is also accused of obstructing justice. Most consequential, he is alleged to have participated in four separate murders in furtherance of the RICO conspiracy. In this

                                    1

motion, Porter moves the Court to suppress an identification of him made by an individual referred to as "Witness D."

On July 16, 2011, law enforcement officers arrested Witness D while he was in possession of a 9mm handgun. A ballistic analysis linked the weapon to the attempted murder of J.M. on October 24, 2010.[1] In an interview conducted by detectives for the New Orleans Police Department, Witness D claimed that he purchased the firearm from an unknown man on the street approximately two weeks before his arrest. The detectives showed Witness D an array of six photographs that included a photograph of Walter Porter. Witness D did not identify anyone in the array as the man who sold him the weapon.

Nearly a year later, on September 13, 2012, Witness D appeared before a federal grand jury to testify about his purchase of the 9mm handgun. Witness D testified that, while walking down the street, he purchased the gun for $100 from a man who was driving a gold Taurus vehicle. Witness D recalled that, when interviewed by police officers after his arrest, he described the seller as a black man with a medium brown complexion, tall and slim, with a bald fade haircut and a goatee beard. Witness D explained further, "He looked like a nerdy type person that wear glasses, but he

---

[1] J.M. was shot 17 times at his home but survived. The ballistic analysis also linked the weapon to other shootings under investigation.

2

didn't have no glasses at the time." The assistant United States Attorney asked if the witness would be able to recognize the man from photographs. Witness D responded, "Probably."

Witness D, the assistant United States Attorney, and two FBI agents then left the grand jury room. Four minutes later, they returned and Witness testified as to what occurred during that time. Witness D agreed that the FBI agents showed him a notebook filled with photographs and asked him to identify anyone who looked familiar. Witness D testified that he flipped through the photographs starting with number 1, and when he got to number 33, he stopped and asked if the man depicted in the photo was tall. Witness D then stated, "And I said that was the one. If he's tall, that's the one right there. That's the one sold me the gun because that looks just like him." Number 33 is a photograph of Walter Porter.

The following exchange occurred next:

Q. Now, the agents were standing there with you as you were flipping through the binder?

A. Yes, sir.

Q. Did they in any way suggest to you that this was the guy that you should be looking at more closely?

A. No.

Q. Did they point to him in anyway and suggest are you sure this is the guy?

A. No, sir.

3

Q. It was on your own when you saw that picture that led you to ask the question if he was tall?

A. Yes, sir.

Q. Okay. Otherwise, not knowing this person's height, does that look like the guy that you just described earlier to this grand jury that stepped out of that Taurus and sold you the gun?

A. Yes, sir.

Q. Nobody forced you to pick that picture out?

A. No, sir.

Q. Did anybody promise you anything?

A. No, sir.

Q. For picking that picture out?

A. No, sir.

Q. Did anybody offer you or threaten you in any way that you had to pick that picture out?

A. No.

Porter contends that the identification procedures were impermissibly suggestive. He seeks to suppress all out-of-court and in-court identifications of him made by Witness D.

## II.

"The Due Process Clause protects against the use of evidence obtained from impermissibly suggestive identification procedures." United States v. Guidry, 406 F.3d 314, 319 (5th Cir. 2005). The Fifth Circuit instructs that the admissibility of identification evidence is governed by a two-step test: "First, we determine

4

whether the identification procedure was impermissibly suggestive, and second, we ask whether the procedure posed a 'very substantial likelihood of irreparable misidentification.'" Id. (quoting United States v. Rogers, 126 F.3d 655, 658 (5th Cir. 1997). "Only when the trial court finds that the photographic spread was impermissibly suggestive is there any need for a determination of whether there was a very substantial likelihood of irreparable misidentification from the proffered witness at trial." United States v. Kimbrough, 481 F.2d 421, 425 (5th Cir. 1973).

There is no strict hearing requirement to determine whether a photo array is impermissibly suggestive. See United States v. Smith, 546 F.2d 1275, 1280 (5th Cir. 1977)(affirming the district court who, after examining a photo spread, denied a motion to suppress without a hearing). "[O]nly the picture spread itself must be evaluated in determining if it [is impermissibly suggestive] – whether other more desirable methods of identification (e.g. a line-up) were available, or whether there was a compelling need for a speedy identification, are just not relevant to a determination of the impermissibly suggestive issue." Kimbrough, 481 F.2d at 424-25 (emphasis in original).

"It is well established that the burdens of production and persuasion generally rest upon the movant in a suppression hearing." United States v. De la Fuente, 548 F.2d 528, 533 (5th

5

Cir. 1977). However, the burden of persuasion shifts to the government in certain situations: 1) to justify a warrantless arrest; 2) to prove the defendant voluntarily waived his privilege against self-incrimination; and 3) to prove that evidence was not tainted by an illegal wiretap. Id. Here, the burden of persuasion rests on the defendant.

### III.

Porter contends that Witness D's identification at the grand jury hearing was "equivocal at best." He claims that the procedures used were impermissibly suggestive because Porter's photo was the only "common denominator" between the photo array shown to Witness D shortly after Witness D's arrest and the notebook of photographs shown to Witness D at the grand jury hearing. Further, Porter submits that the pressures of the grand jury proceeding and Witness D's own legal troubles influenced Witness D to make an identification. Porter's contentions are without merit.

Porter mischaracterizes Witness D's identification as "equivocal." Witness D testified that he flipped through no less than 32 photos before coming to Porter's. As he turned to Porter's photo, he stated, "[T]hat was the one. If he's tall, that's the one right there. That's the one sold me the gun because that looks just like him." When asked, "Otherwise, not knowing this person's height, does that look like the guy that you just described earlier to this grand jury that stepped out of that Taurus and sold you

6

the gun?" Witness D responded, "Yes, sir." Witness D's testimony is unequivocal.

Further, Porter's contention that the procedures were suggestive because his photo was the only one depicted in both arrays is specious. The two identifications were administered almost a year apart. Further, the notebook shown to Witness D at the grand jury hearing contained 60 photographs, many of which contained plausible matches to Witness D's description of Porter. The substantial passage of time and the large number of photos used in the second identification eliminate any potential for prejudice by showing Porter's photo twice. See Nettles v. Wainwright 677 F.2d 410, 414 (5th Cir. 1982)(holding that a lineup was not impermissibly suggestive even though the witness viewed a photo array shortly before the lineup, and the defendant was the only person who appeared in both the photographs and the lineup.)

Finally, there is no evidence that Witness D was "pressured" into identifying Porter at the grand jury hearing. Witness D repeatedly assured the prosecutors and the grand jury that no one suggested anything about the photographs or coerced him to choose Porter's photograph. Porter's pleas to the contrary are baseless.

Accordingly, IT IS ORDERED that Walter Porter's motion to suppress the identification of him made by Witness D is hereby DENIED.

New Orleans, Louisiana, February 29, 2016

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE